In re Donald KULICK.

No. CV 88–0360.

United States District Court,
E.D. New York.

May 12, 1988.

Harvis & Zeichner by Nathan Schwed, New York City, for debtor.

Merrell B. Green, U.S. Dept. of Justice, Washington, D.C.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an appeal from a decision of the Bankruptcy Court (Holland, J.) holding that certain proofs of claim filed by the Internal Revenue Service ("IRS") were late claims that were properly subordinated to claims of general creditors. According to IRS, the claims at issue were amendments to earlier claims and the Bankruptcy Court incorrectly held the claims to be untimely. For the reasons that follow, this Court agrees with the decision of the Bankruptcy Court holding the claims to be late. Accordingly, the decision of the Bankruptcy Judge is affirmed.

### I.

This case involves claims to the estate of debtor Donald Kulick ("Kulick"). On December 20, 1983 Kulick filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Approximately one year later, the Bankruptcy Court converted the matter to a Chapter 7 case and appointed a trustee. Shortly thereafter, notices were mailed to all creditors advising them that the last day for filing claims was January 30, 1985 (the "Bar Date").

Prior to the Bar Date, IRS filed a $10,000 claim for personal income tax liability for the tax year 1982 and a $13,000 claim for personal income tax liability for the tax

year 1983. Each of these claims were subsequently expunged by the Bankruptcy Court and the propriety of that action is a matter that has not been raised before this Court.

At issue here are claims made by IRS on July 24, 1987—approximately two and one half years after the Bar Date. This later submission consisted of a claim in the amount of $145,746.74 which was comprised of the $23,000 income tax claim and a separate 100% penalty assessment against Kulick in the amount of $122,-746.74 for his role as a "responsible person" with respect to unpaid withholding and F.I.C.A. tax liabilities of two companies controlled by Kulick for the tax periods December 21, 1982 through March 31, 1983 and September 30, 1982 through September 30, 1983 (the "1987 Claim").

Holding that the timely IRS filing for Kulick's personal income tax liability gave no notice of the transaction that formed the basis of the 1987 Claim and that the 1987 Claim could not therefore be properly characterized as an amendment to the timely claims, the Bankruptcy Court held that the 1987 Claim was late and must be subordinated to the claims of the general creditors. This appeal followed.

## II.

As an initial matter, the Court notes that no issue has been raised either here or before the Bankruptcy Court as to whether IRS received notice of the Bar Date. Neither, as noted above, is the propriety of the $23,000 personal income tax assessment before this Court. Instead, the central issue is whether the penalty assessment against Kulick for his role as a responsible person with respect to withholding and FICA tax liabilities should be characterized, in accordance with the view of the IRS, as an "amendment" to the timely claim or, in accordance with the trustee's view, as a late claim. Since dates upon which proofs of claim must be filed have been construed strictly as statutes of limitation, *see In re W.T. Grant Co.*, 53 B.R. 417, 420 (Bankr.S.D.N.Y.1985), this finding is critical.

Holding that the 1987 Claim was not an amendment, the Bankruptcy Court was properly guided by principles long established in this Circuit as set forth in *In re G.L. Miller & Co.*, 45 F.2d 115 (2d Cir. 1930). There, the Court of Appeals for the Second Circuit held that claims were properly characterized as amendments where they "correct defects of form ... supply greater particularity in the allegations of fact from which the claim arises or [formalize claims] based upon facts which, within the statutory period, had already been brought to the notice of the trustee by some informal writing or some pleading in the bankruptcy proceeding." *Id.* at 116. The Court there rejected specifically any attempt to "use an 'amendment' as a device for filing after the statutory period a claim based upon a cause of action of which no notice whatever had been given the trustee by anything previously filed." *Id.* In short, the Second Circuit in *Miller* adopted a flexible test based upon the notion of whether the initial claim gives notice of a later claim. This principle continues to guide courts today, in this Circuit and elsewhere, in determining whether a claim is properly characterized as an amendment. *See e.g., In re International Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir.1985); *In re W.T. Grant Co.*, 53 B.R. 417, 420-21 (Bankr.S.D.N.Y.1985).

In *In re Miss Glamour Coat Co.*, 80–2 U.S.T.C. (CCH) ¶ 9737 (S.D.N.Y.1980) [available on WESTLAW, 1980 WL 1668], District Judge Mary Johnson Lowe recognized the vitality of the Second Circuit's decision in *Miller*, but elaborated on that decision and held that the Bankruptcy Court is bound to consider certain equities when deciding whether to categorize a late claim as an amendment. Remanding the *Miss Glamour Coat* case to the Bankruptcy Court for further findings, Judge Lowe set forth the following five factors for the Bankruptcy Court to consider:

1. whether the bankrupt creditors relied upon the earlier proofs of claim or whether they had reason to know that the subsequent proofs of claim would follow;

2. whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing the amendment;

3. whether the late filer intentionally or negligently delayed in finding the proof of claim;

4. the justification, if any, for the failure to file for a time extension for the submission of further proofs of claim;

5. whether or not there are any other considerations which should be taken into account in assuring a just and equitable result.

Here, the Bankruptcy Court considered the language of both the *Miller* and *Miss Glamour Coat* courts and concluded that neither required a finding that the claim at issue was properly characterized as an amendment. This Court finds no error in that holding.

### III.

▉ Turning first to the "notice" issue, the Court cannot find, as IRS suggests, that a timely claim for personal income tax liability can put the other parties on notice of any possible liability arising out of a debtor's activity as a "responsible person" with respect to unpaid withholding and FICA tax liabilities of corporations controlled by the debtor. The mere fact that both liabilities are personal to the debtor does not, in and of itself, make them the same for notice purposes. As the Bankruptcy Court noted, the claim for personal income tax liabilities fails to "give notice of the conduct, transaction or occurrence that forms the basis of the new claims" and gives "absolutely no intimation whatsoever of the new claims." Under these circumstances, the Bankruptcy Court properly found that the timely claim gave no notice of the claim filed after the Bar Date and thus could not be characterized as an amendment.

▉ The Bankruptcy Court then considered whether the factors in *Miss Glamour Coat* required a finding that the later claim was properly characterized as an amendment. Although the Bankruptcy Court did not make detailed findings as to this issue, opting instead to merely cite the cases considered, it held that the equities did not favor allowing amendment. According to IRS, this was error.

Initially, this Court notes that the *Miss Glamour Coat* factors have never been adopted as binding precedent in this Circuit. Thus, it is unlikely that this Court would find reversible error even if the Bankruptcy Court failed completely to consider either the *Miss Glamour Coat* factors or cases such as *In re Saxe*, 14 B.R. 161 (Bankr.S.D.N.Y.1981), which, under facts similar to those raised here, held that application of the equitable factors was appropriate. Indeed, courts elsewhere have rejected specifically application of the *Miss Glamour Coat* factors to test the timeliness of claims. *See e.g., In re Owens*, 67 B.R. 418, 424 (Bankr.E.D.Pa.1987) (*Miss Glamour Coat* factors held not determinative); *In re Norris Grain Co.*, 81 B.R. 103, 107–08 (Bankr.M.D.Fla.1987) (applying equitable factors only to "indulge in argument" and refusing to apply factor inquiry as to whether other creditors would receive a "windfall" as a result of refusing amendment); *In re AM International, Inc.*, 67 B.R. 79, 82 (N.D.Ill.1986) (refusing to apply *Miss Glamour Coat* factors where late filer can offer no justification as to untimely claim).

Even assuming, however, the propriety of applying the *Miss Glamour Coat* factors, this Court finds no error in the holding below since consideration of at least three of the factors militate against a finding that the 1987 Claim was an amendment. Specifically, the Court notes that: (1) based upon the findings described above, neither the debtor nor the other creditors had reason to believe that business-related proofs of claim would eventually be filed by IRS; (2) IRS has proferred no reasonable justification for its failure to either file a timely claim or a request for an extension of time, and (3) since the debtor failed to avail himself of a procedure allowing him to file a timely claim for IRS and avoid later payment of a non-dischargeable debt and IRS has failed to set

forth any facts rebutting the trustee's claim that it was a breakdown in internal communication that resulted in the late filing, equitable factors are not present that require a ruling in favor of IRS.

## IV.

This Court finds no error in the Bankruptcy Court's refusal to allow amendment by IRS. Neither application of the traditional *G.L. Miller* test nor application of the equitable factors announced in *Miss Glamour Coat* required a different result. The decision of the Bankruptcy Court is affirmed.

SO ORDERED.